ELLEN F. ROSENBLUM
Attorney General
SARAH WESTON  #085083
Assistant Attorney General
DARSEE STALEY #873511
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Sarah.Weston@doj.state.or.us
        Darsee.Staley@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; CASCADIA WILDLANDS; PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS; INSTITUTE FOR FISHERIES RESOURCES; NATIVE FISH SOCIETY,<br><br>Plaintiffs,<br><br>v.<br><br>PETER DAUGHERTY, in his official capacity as Oregon State Forester; KATHERINE SKINNER, in her official capacity as District Forester for the Tillamook District; MICHAEL CAFFERATA, in his official capacity as District Forester for the Forest Grove District; DANIEL GOODY, in his official capacity as District Forester for the Astoria District,<br><br>Defendants. | Case No.  3:18-cv-01035-MO<br><br>DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS |

Page 1 -   DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
    SW/db5/9256831-v6b

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

and

OREGON FOREST INDUSTRIES COUNCIL,

        Intervenor-Defendant.

and

TILLAMOOK COUNTY,

        Intervenor-Defendant.

## I.    Introduction.

Plaintiffs' memorandum in opposition to defendants' Rule 12 Motion makes key concessions that compel the granting of defendants motion to dismiss the section 9 claim to the extent it (a) seeks to impose liability for or to remedy past acts, including past timber sales and road construction; (b) seeks an order that the state "obtain an HCP/ITP pursuant to an enforceable timeline;" and (c) seeks to impose liability for or to remedy allegedly inadequate stream buffers. Plaintiffs also do not respond to the State's motion to strike paragraph 113 and its associated photographs of private lands, and thereby concede that the allegations should be stricken. Defendants' Motion should be granted on these issues.

In response to the remainder of defendants' rule 12 motions, which seek to eliminate immaterial and impertinent matters, and compel plaintiffs to tie their general and conclusory allegations to specific facts on the ground that can be attributed to defendants, Plaintiffs reiterate the arguments, contentions and conclusions set forth in the complaint. They argue that the historical and other allegations provide "context" or evidence, and that they should not be required to allege or prove that any particular sale or sales authorized by defendants' causes take, and flatly refuse to provide any further detail to enable defendants to identify the particular activities actually at issue in this lawsuit. As the State demonstrated in its opening motion, the complaint fails to allege specific facts tying current practices to actual injury to the species in identifiable locations and plaintiffs' opposition provides no clarification. Defendants' Rule 12

Page 2 -   DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Motions seek a more definite statement of the alleged conduct that plaintiffs assert will cause take, and the excessive historical allegations and allegations about federal recovery plans and section 10 activities should be stricken as immaterial and impertinent. Cleaning up and clarifying the complaint in this way will establish the location, and, more importantly, will identify what particular activities this litigation is about so the State can fairly be on notice and prepare a defense. Absent a concrete and identified factual circumstance this court would render an advisory opinion. The State's motion to strike and motion for more definite statement should be granted.

## II. The court should grant the motion to dismiss based on plaintiffs' concessions.

Plaintiffs' opposition appears to misunderstand the nature of defendants' Rule 12 Motions. Courts in this circuit routinely narrow the issues at the pleading stage by dismissing claims "to the extent" they are unsupported by the alleged facts or barred by the law. *See, e.g.*, *Galbraith v. MML Inv'r Servs., Inc.*, No. CV 09-437-MO, 2009 WL 4955617, at *5 (D. Or. Dec. 11, 2009) (dismissing various claims only "to the extent that they are based on actions" that occurred after a certain date); *Wells Fargo Bank, N.A. v. Ash Org.*, No. CV-09-188-MO, 2010 WL 11580083, at *6 (D. Or. Apr. 15, 2010) (dismissing affirmative defense, counterclaim, and third-party complaint "to the extent those claims are premised" on a theory that the court found failed as a matter of law); *Ellis v. Bradbury*, No. C-13-1266 MMC, 2014 WL 1569271, at *11 (N.D. Cal. Apr. 18, 2014) (dismissing plaintiffs' § 7 claims "to the extent they are based on the allegation that the EPA did not consult with the FWS with respect to its approval of … four products" that were not included in the notice letter, but allowing § 7 claims to go forward with respect to other products). Defendants' Motion asks the Court to do just that—dismiss the section 9 claim to the extent it is barred as a matter of law. The Motion demonstrates the deficiency of the complaint with respect to three areas: (1) liability for, and relief to correct, past acts, including past timber sales and road construction; (2) plaintiff's request for an order that the state "obtain an HCP/ITP pursuant to an enforceable timeline," and (3) liability based on

Page 3 -    DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

allegedly inadequate stream buffers.  The Court should grant the state's motion to dismiss in all three respects, for the reasons set forth in the Motion, and because plaintiffs concede these points.

### A. Plaintiffs concede that relief for past activities is not available in this action.

In response to the Eleventh Amendment and mootness arguments against liability for past activities, plaintiffs effectively concede that they cannot obtain the court's "review or remedy [for] past sales or other activities."  *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF No. 39)("Pl. Opp.") at 19.  Plaintiffs also deny that the complaint seeks such relief.  *See also* Resp. at 25-26 ("Plaintiffs do not seek a 'remedy' for already completed timber sales.").[1]  In light of this concession, and the authorities set forth in the Motion, plaintiffs' section 9 claim should be dismissed to the extent it seeks retrospective relief or relief to remedy past activities.

### B. Plaintiffs concede that the Court cannot order defendants to obtain an HCP.

Defendants argued that the Court lacks authority to order the State to obtain an ITP/HCP and plaintiffs "agree with the State that, in the event the Court finds the Foresters liable under section 9, the choice will be left to the State whether to cease those actions causing take, or to comply with the terms of an HCP and ITP issued pursuant to section 10."  Pl. Opp. at 29; *see also* FN 10, rejecting suggestion that "Plaintiffs improperly seek an order requiring the State to obtain an ITP."  Because plaintiffs concede that the Court cannot, in this action, order the State to "obtain an HCP/ITP pursuant to an enforceable timeline," the Court should dismiss the section 9 claim to the extent it seeks such relief.  *See* Comp. Prayer for Relief ¶ 2.

### C. Plaintiffs concede that take is not caused by allegedly insufficient stream buffers.

Defendants' Motion identified two reasons sufficient for the Court to dismiss the section 9 claim to the extent plaintiffs rely on allegations of "inadequate" stream buffers.  First,

---

[1] Defendants do not dispute that past activities may be *evidence* that can support liability for future activities; however, the plain text of plaintiffs' complaint apparently seeks to impose *liability* for past acts (*See, e.g.,* Prayer for Relief ¶, expressly seeking declarations that defendants "have violated the ESA").

Page 4 -   DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

plaintiffs' request for relief does not seek relief based on the stream buffers. *See* Defendants' Rule 12 Motions ("Rule 12 Mtn.") at 23-24 (Section IV(C)(1)). Second, the stream buffer allegations fail as a matter of law because section 9 does not require the creation of future habitat. *See id.* at 24-25 (Section IV(C)(2)). Plaintiffs respond to the first point, but not the second.

Plaintiffs assert, notwithstanding the fact that the prayer does not seek relief based on the buffer allegations, that they *do* seek relief related to stream buffers, pointing to paragraph 2 of their complaint. Pl. Opp. at 31. Elsewhere in the opposition brief, however, plaintiffs omit stream buffers in the list of activities that they allege cause take. *See* Pl. Opp. at 17 (listing only "logging, log-hauling, road construction, and/or road impairments [sic] on high-risk and erosion-prone slopes resulting in erosion and landslides"). Defendants are left with the lingering question of whether or not buffers are alleged to cause take or whether or not any relief is sought with respect to them.

Either way, the section 9 claim should be dismissed to the extent it relies on allegedly inadequate stream buffers because depriving a listed species of potential future habitat is, as a matter of law, not section 9 take. *See* Rule 12 Mot. at 24-25. Plaintiffs' failure to respond to this argument on the merits is tantamount to a concession that "inadequate" stream buffers do not "cause" take. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n. 7 (N.D. Cal. 2013) (party conceded arguments in Rule 12 motion by failing to respond to them). Accordingly, the Court should dismiss the section 9 claim to the extent it would be based on a theory of stream buffers causing take.

### III.   Plaintiffs have the burden of alleging and proving site-specific facts.

A key dispute between the parties, which is likely to persist throughout this case, is whether a finding of take depends on the site-specific facts on the ground. This dispute is at the center of the parties' disagreement regarding the motion for a more definite statement and to

Page 5 -   DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

strike redundant, immaterial and impertinent contentions that are offered in the complaint, not as actionable allegations constituting a claim, but merely as "context."

Plaintiffs assert that under their theory of liability, they do not have to prove that "each individual sale will result in take of coho salmon." Pl. Opp. at 18. They contend that a sale-by-sale approach is "unnecessarily burdensome." Pl. Opp. at 17. Instead, they argue, they simply need to allege (and later prove) that, in general, take is caused by defendants' approval of "logging, log-hauling, road construction, and/or road impairments [sic] on high-risk and erosion-prone slopes resulting in erosion and landslides." Pl. Opp. at 17. This approach should be rejected for at least three reasons.

First, the role of the federal courts is to resolve concrete controversies, not resolve abstract scientific questions divorced from the facts on the ground. An advisory opinion about whether certain types of practices might, in some circumstances, cause take is just that: an impermissible advisory opinion. *See, e.g.*, *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("'(T)he federal courts established pursuant to Article III of the Constitution do not render advisory opinions.'"); *see also Flast v. Cohen*, 392 U.S. 83, 96–97 (1968) ("the rule against advisory opinions also recognizes that such suits often 'are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests.'"). To prevail, plaintiffs must first allege and later prove that some specific conduct actually carried out by defendant causes take, not that some combination of abstract activities or practices in combination with some natural occurring weather event(s) may cause take. Take can occur, if at all, in concrete circumstances that *in fact exist*. Here, those circumstances (if any) are specific current or future timber sales. This court should reject plaintiffs' attempt to conduct a scientific symposium in a federal court and require pleading of specific factual circumstances.

Page 6 -   DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Second, plaintiffs cannot have it both ways; this case involves either a programmatic/facial challenge (with the attendant limitations) or a challenge to specific actions (with the attendant burden of specific factual development, as in any as-applied type challenge). In their opposition, plaintiffs insist that they are *not* raising a programmatic challenge. They insist that they do *not* intend to assert that the plans and policies of the Forest Practices Act and Forest Practices Regulations, and the historical and current Forest Management Plans governing state forests, unlawfully *cause* take. *See* Pl. Opp. at 17 ("It is not that the FPRs, FMPs, IPs, or AOPs result in take of coho salmon…").[2]  Instead, plaintiffs explain, what they contend causes take is defendants' approval of certain timber-sale associated activities, namely, "logging, log-hauling, road construction, and/or road impairments [sic] on high-risk and erosion-prone slopes resulting in erosion and landslides." Pl. Opp. at 17. And yet, plaintiffs insist, they need not tie those allegations to anything more specific than the labels applied.

Defendants' Rule 12 Motion asks the Court to require plaintiffs to make a definite statement of the claim and not allow plaintiffs to circumvent the limitations on programmatic challenges by bringing a programmatic challenge and calling it by another name. If, as they profess, plaintiffs' theory of liability is that specific actions cause take, the complaint should identify those specific actions with particularity so that their proof involves particular facts and specific chains of causation associated with each of those actions. Plaintiffs cannot prevail without demonstrating that conduct which occurs only in the context of a specific sale or sales causes take. Anything else is a programmatic challenge.

The cases plaintiff points to are not contrary; in each one the plaintiffs alleged that the regulatory scheme itself or a failure to comply with a federally approved guidance document in particular respects caused take. *Cf. Strahan v. Coxe*, 127 F.3d 155, 164 (1997) (asserting that state's commercial fishing *regulatory scheme* violated the ESA; court found take where state

---

[2] Plaintiffs' clarification is well taken, in light of *Cascadia Wildlands v. Kitzhaber*, 911 F. Supp. 2d 1075, 1087 (D. Or. 2012) (dismissing claim based on allegedly inadequate take avoidance policy for listed birds).

Page 7 -   DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

"licensed commercial fishing operations to use gillnets and lobster pots in specifically the manner that is likely to result in a violation of federal law"); *Loggerhead Turtle v. County Council of Volusia County*, 896 F. Supp. 1170, 1182 (M.D. Fla. 1995) (plaintiff asserted that county's *ordinances* regarding lighting and vehicular access took turtles in violation of the ESA; court entered preliminary injunction enjoining county from "permitting private vehicles upon its beaches at night and from permitting vehicles to drive and park within the conservation zone"); *Sierra Club v. Yeutter*, 926 F.2d 429, 438 (5th Cir. 1991) (asserting that the US Forest Service's "practice of even-aged management" took woodpeckers in violation of the ESA; defendant conceded that their practices failed to comply with the management directives in the handbook approved under section 7 of the ESA). Here, plaintiffs disavow such a claim and instead argue that it is some (relatively unspecified) *subset* of the particular activities approved under the existing management authorities that "causes" take. That subset must be specifically identified and alleged, and later specifically proved to actually cause death or injury of an identifiable fish.

Additionally, Plaintiffs cite *Pacific Rivers Council v. Brown*, 2002 WL 32356431 (2002), which also does not aid their position that they need not establish in their complaint that defendants are a proximate cause of alleged take by pleading a specific set of facts. In addition to the reasons distinguishing that case outlined in the State's opening brief (*see* Rule 12 Mtn. at 22), *Pacific Rivers* is unhelpful for the further reason that it did not involve a motion for more definite statement. At the pleading stage, under the since-discarded pleading standards, the State apparently did not challenge the vagueness of the allegations—focusing instead on whether the State could be held liable for authorizing third-party activities at all. Here, in contrast, under modern and more stringent pleading standards, the State *is* challenging the vagueness of plaintiff's allegations, and asking that the Court direct plaintiffs to plead the elements of a section 9 claim with enough specificity to permit the State to understand the actual facts and chain of causation alleged to cause take to ascertain its defense.

Page 8 -    DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Third, proof of take by habitat modification (and that is all plaintiffs have even arguably alleged facts to support here) requires more than asserting that logging impacts the landscape in the abstract.[3] Plaintiffs must prove that (1) the species is present in the area where habitat modification is alleged to occur, (2) that the habitat modification is in fact significant, (3) that the modification in fact significantly impairs an essential behavioral pattern of a listed species resulting in actual death or injury, and (4) that the defendant's challenged act is the proximate cause of the habitat modification and actual injury or death. *See* Rule 12 Mtn. at 8-9 (laying out elements of take). Proving take, in other words, "involves difficult questions of proximity and degree," *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or*, 515 U.S. 687, 708 (1995). These "difficult questions" are not susceptible to resolution in generalities and require site-specific facts.

**IV.     The Court should direct plaintiffs to amend the complaint to make a more definite statement of the conduct that allegedly causes take.**

In the Rule 12 motion, defendants argue that the facts matter in this case. Landslides, for example, occur more or less frequently based upon a number of factors, for example, among others, a combination of slope, vegetation type, slope history, geology, soils and weather. And whether a given landslide delivers significant amounts of sediment to a stream where coho are present depends on series of additional factors coming into play. The governing management plans for Oregon's state forests identify a host of factors that geotechnical specialists use to evaluate slope risk and whether landslides are likely to reach fish bearing streams—all of which are used to design timber sales on a sale-by-sale basis using site-specific features. *See, e.g.,* Northwest Oregon State Forests Management Plan Revised Plan April 2010 *4-66, 4-73 (Req. for Judicial Notice, Exh. 2, p. 5-6) (identifying factors such as the flow path of potential landslide, junction angles of tributaries that may stop a landslide from delivering to a given coho-bearing stream, whether a landslide, once initiated, even reaches the nearest stream at all as

---

[3] Notably, the plaintiffs in *Strahan* and *Volusia County* asserted specific factual circumstances that were alleged to *directly* result in take of an endangered species.

Page 9 -    DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

opposed to coming to rest mid-slope, and calling on geotechnical specialists to apply expertise in designing sales).  The complaint's general assertions that timber harvest results in landslides obscure the material facts concerning defendants' "activities" and it is defendants' specific activities that plaintiffs must prove cause take.

Plaintiffs' failure to draw even one line from a timber sale, to a rain event, to a landslide, to sediment volume in a stream bearing fish (at a critical life stage), to a reasonably likely injury to a member of the listed species demonstrates the generalized hypothesis that plaintiffs advance.  Defendants' Motion seeks plain statement of the specific sales and activities plaintiffs are asserting the defendant Foresters authorize as part of the causal chain linking that action to alleged actual harm to the species.  Specificity is especially important in this complaint because the alleged habitat destruction is of habitat other than the habitat of the listed species.  Consequently, the chain of causation is long and complex and plaintiffs should be required to allege the facts that they will have to prove: facts supporting each link in the chain of causation, not simply conclusory statements about alleged harms from timber harvest.

Plaintiffs defend the complaint's reliance on broad generalities by arguing that the complaint needs context.  Plaintiffs' approach, however, stretches the pleading rules to the breaking point.  The complaint's repetitive and only vaguely relevant context allegations are not an adequate substitute for actual factual allegations identifying specific conduct of defendants that, if proved, would establish take.

With respect to "historical" context dating back to the findings underpinning the listing decision in 1995, for example, plaintiffs "allege" that "a primary reason" for the decline of coho between the early 1900s and 1997 was "poor logging practices and associated road construction."  But the complaint does not allege facts about what those practices were, nor does it allege that modern silvicultural practices authorized by defendants on an ongoing basis are the same or even similar.  Pl. Opp. at 2.  These facts are critical because (1) as plaintiffs concede, defendants are immune from liability based on past practices and (2) whether and to what extent,

Page 10 -   DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

if any, impacts on coho are reasonably likely to occur depends upon what, specifically, is happening now and in the immediate future.

Plaintiffs must identify which sales they allege cause take, to at a minimum provide more detail on two material facts: (1) what are the "activities" they allege cause take, and (2) what landscape features must be present for such activities to allegedly cause take? For example, they must explain what types of "road construction" and "road maintenance" they allege cause take. Are plaintiffs alleging that *take* is caused by defendants' road maintenance program, including the affirmative requirements in rules and timber sale contracts to maintain road surfacing, placement of site-specific sediment and runoff reduction measures such as cross drains, settling pools, and other means of disconnecting roads from streams? Are plaintiffs alleging that *all* modern road construction methods cause take, even when that road construction occurs on a ridge-top far from streams? And what is a "steep slope" to plaintiffs, and which steep slopes do they allege that in combination with these aforementioned unspecified activities cause take? Plaintiffs' failure to allege specific factual circumstances would allow a hypothetical discussion to occur of potential impacts to a species should certain circumstances related to the landscape and weather align: This proves a hypothesis, not legal liability.  Plaintiffs must at least set its allegations in the state forest in a specified location to ensure a stream is actually located in an area where it could be affected by the alleged landslides it asserts are a result of defendants' unspecified activities.[4]

---

[4] Plaintiffs appear of two minds about the implications of Table 1 of the complaint – on the one hand arguing that they are not required to prove that each individual sale causes take, and that they are not limited by the allegations in the table (many of which are fully complete, and cannot be a basis for imposition of liability), and on the other hand, that the table supplies what is required.  Pl. Opp. at 18-19.  In any event, the State's arguments herein respond to the former, and with respect to the latter, the allegations in the table are insufficient to supply the material facts related to each sale and all the links in the causal chain, for example, no attempt to identify in the named sale location which defendant-authorized activity, on which roads, or which slopes, allege cause take or should be enjoined due to its effect on species in which stream(s).

Page 11 -   DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

For the reasons set forth in the Rule 12 Motion, and the further reasons discussed above, the Court should direct plaintiffs to amend the complaint to clearly and specifically allege the activities alleged to cause take and which plaintiffs seek to enjoin.

## V.     Immaterial contentions and assertion should be stricken.

For the reasons set forth in the Rule 12 Motion, the twenty-year-old HCP-related allegations and the recovery plan-related allegations should be stricken. *See* Rule 12 Mtn. at 25-29.  What the federal government views as necessary to recovery of the species or necessary to support issuance of an HCP is not the equivalent of the section 9 take prohibition. This case is not about whether defendants' authorization of timber sales is sufficient to assure recovery, nor is it a mechanism to have the federal courts step in and redesign the forest management plans to affirmatively promote conservation.  A section 9 claim is limited to the question of whether any particular future sale (or, in plaintiffs' formulation, "activity", *i.e.* one or more aspects of a particular sale) is sufficiently likely to proximately cause death or injury of a member of the listed species.  Superfluous historical allegations are a proper subject of a motion to strike.  *See, e.g.*, *Healing v. Jones,* 174 F. Supp. 211, 220 (D. Ariz.1959) (striking such allegations from a counterclaim).

Further, as plaintiffs apparently concede by not responding, the Court should strike the photographs and allegations pertaining to the landslides on private lands, which are governed under different management authorities and are not at issue here.  *See* Rule 12 Mtn. at 31.

## VI.     Conclusion.

For the reasons set forth in the defendants' Rule 12 Motion, and as discussed above, defendants respectfully request that the Court:

(1) dismiss plaintiffs' section 9 claim to the extent it:

    (a) seeks to impose liability for or to remedy past acts, including past timber sales and road construction;

    (b) seeks an order that the state "obtain an HCP/ITP pursuant to an enforceable

Page 12 -   DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

    timeline;" and

    (c) seeks to impose liability for or to remedy allegedly inadequate stream buffers.

  (2) direct plaintiffs to amend the complaint by providing a more definite statement as to which sale, or group of sales, are alleged to be reasonably certain to deliver sufficient sediment to a coho stream and actually kill or injure listed fish, and how.  Alternatively, plaintiffs should be directed to more specifically identify the particular conduct they challenge, so that defendants can identify whether such conduct is in fact required or permitted in any planned sales.

  (3) strike the allegations in paragraphs 54, 55-60, 63, 64, 90, 100, and paragraph 113 and its associated photographs.

DATED November __2__, 2018.

            Respectfully submitted,

            ELLEN F. ROSENBLUM
            Attorney General

            *s/ Sarah Weston*
            SARAH WESTON #085083
            Assistant Attorney General
            DARSEE STALEY #873511
            Senior Assistant Attorney General
            Trial Attorney
            Tel (971) 673-1880
            Fax (971) 673-5000
            Sarah.Weston@doj.state.or.us
            Darsee.Staley@doj.state.or.us
            Of Attorneys for Defendants

Page 13 -  DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS
SW/db5/9256831-v6b
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# CERTIFICATE OF SERVICE

I certify that on November  2 , 2018, I served the foregoing DEFENDANTS' REPLY IN SUPPORT OF THEIR RULE 12 MOTIONS upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Oliver J. Stiefel | ___ HAND DELIVERY |
| Christopher G. Winter | ___ MAIL DELIVERY |
| Crag Law Center | ___ OVERNIGHT MAIL |
| 3141 E. Burnside Street | _X_ E-SERVE |
| Portland, OR 97214 | |

*Of Attorneys for Plaintiffs Center for Biological Diversity, Cascadia Wildlands, Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, and Native Fish Society*

| | |
|---|---|
| Brian P. Segee | ___ HAND DELIVERY |
| Center for Biological Diversity | ___ MAIL DELIVERY |
| P.O. Box 1646 | ___ OVERNIGHT MAIL |
| Ojal, CA 93024 | _X_ E-SERVE |

*Of Attorneys for Plaintiffs Center for Biological Diversity, Cascadia Wildlands, Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, and Native Fish Society,*

| | |
|---|---|
| Amy R. Atwood | ___ HAND DELIVERY |
| Center for Biological Diversity | ___ MAIL DELIVERY |
| PO Box 11374 | ___ OVERNIGHT MAIL |
| Portland, OR 97211 | _X_ E-SERVE |

*Of Attorneys for Plaintiffs Center for Biological Diversity, Cascadia Wildlands, Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, and Native Fish Society*

Page 1 -   CERTIFICATE OF SERVICE
SW2/crr/9014232-v1A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

| | |
|---|---|
| Nicholas Stanton Cady<br>Cascadia Wildlands<br>PO Box 10455<br>Eugene, OR 97440<br>    *Of Attorneys for Plaintiff Cascadia*<br>    *Wildlands* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br> X  E-SERVE |
| Kirk B. Maag<br>Crystal S. Chase<br>Stoel Rives LLP<br>900 SW 5th Ave., Ste 2600<br>Portland, OR 97204<br>    *Of Attorneys for Intervenor-Defendant*<br>    *Oregon Forest Industries Council* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br> X  E-SERVE |
| Ryan P. Steen<br>Stoel Rives LLP<br>600 University Street, Suite 3600<br>Seattle, WA 98101<br>    *Of Attorney for Intervenor-Defendant*<br>    *Oregon Forest Industries Council* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br> X  E-SERVE |
| Jay T. Waldron<br>Jessica Schuh<br>Schwabe, Williamson & Wyatt PC<br>1211 SW 5th Ave., Suite 1600<br>Portland, OR 97204<br>    *Of Attorneys for Intervenor-Defendant*<br>    *Tillamook County* | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br> X  E-SERVE |

    *s/ Sarah Weston*
SARAH WESTON #085083
Assistant Attorney General
DARSEE STALEY #873511
Senior Assistant Attorney General
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
Sarah.Weston@doj.state.or.us
Darsee.Staley@doj.state.or.us
Of Attorneys for Defendants

Page 2 -   CERTIFICATE OF SERVICE
           SW2/crr/9014232-v1A

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000