ELLEN F. ROSENBLUM
Attorney General
SARAH WESTON  #085083
DARSEE STALEY #873511
DEANNA J. CHANG #192202
Senior Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Sarah.Weston@doj.state.or.us
           Darsee.Staley@doj.state.or.us
           Deanna.J.Chang@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; CASCADIA WILDLANDS; NATIVE FISH SOCIETY,<br><br>Plaintiffs,<br><br>v.<br><br>PETER DAUGHERTY, in his official capacity as Oregon State Forester; KATHERINE SKINNER, in her official capacity as District Forester for the Tillamook District; MICHAEL CAFFERATA, in his official capacity as District Forester for the Forest Grove District; DANIEL GOODY, in his official capacity as District Forester for the Astoria District,<br><br>Defendants. | Case No.  3:18-cv-01035-MO<br><br>DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT<br><br>*Expedited Consideration Requested* |

Page 1 -   DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
    10185765

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

and

OREGON FOREST INDUSTRIES COUNCIL,

       Intervenor-Defendant.

and

TILLAMOOK COUNTY,

       Intervenor-Defendant.

## CONFERRAL

The parties conferred by telephone on April 9, 2020 and were unable to resolve the dispute. It is defendants' understanding that plaintiffs oppose the stay requested by this Motion, until October 30, 2020, but would not oppose a stay of 60 days with option to reassess after 60 days. Intervenor-Defendant Tillamook County and Intervenor-Defendant Oregon Forest & Industries Council (OFIC) take no position on the present motion, but as an alternative suggest a stay of 90 days with option to reassess at that time.

## MOTION

Defendants move for a stay of this matter through **October 30, 2020**. In support of this Motion, defendants rely on the Court's inherent power to control its docket in the interest of justice and judicial efficiency, the Declaration of Liz Dent, filed concurrently, and Memorandum in Support set forth below.

The immediate trigger for this request is the COVID-19 pandemic. Responding to the challenges of the current health crisis has taxed ODF's resources in multiple ways. Like all Oregonians, the employees of the Oregon Department of Forestry (ODF) are adjusting to the practical difficulties of operating under the Governor's stay at home order. In addition, ODF is playing a key role, via its Incident Management Teams, in the State's emergency response to COVID-19.

Page 2 -   DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
10185765

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Compounding the strain on ODF's resources is the fast-approaching fire season. Each Spring ODF plans for the variable and unpredictable needs of forest fire response. The current health crisis has required ODF to devote additional resources to adapting its firefighting operations to respond effectively to wildfires while maintaining social distancing and other measures for the protection of the health and safety of firefighters and logistical personnel while they work to protect the public. Many ODF employees have seasonal fire response duties, including staff who are critical to the defense of this litigation.

Finally, the above-referenced constraints, even in the absence of the ongoing demands of this litigation, imperil the ODF's ability to timely complete the long-running process of developing a multi-species Habitat Conservation Plan (HCP), in cooperation with ODF's federal agency partners. That HCP process has been underway since 2013 and is currently scheduled to be completed this Summer and reviewed and voted upon by the Oregon Board of Forestry (Board) at its meeting in October. If the Board approves, the HCP will be submitted for federal approval. The federal agencies will review the HCP, including under the National Environmental Policy Act (NEPA),[1] and decide whether to approve it and issue an Incidental Take Permit (ITP). The convergence of the demands of the COVID-19 pandemic and preparation for the upcoming fire season, however, have stretched ODF's resources to the point where timely completion of the HCP could be jeopardized if ODF continues its work on the HCP and defense of this litigation on parallel tracks.

Accordingly, defendants request a **stay of this litigation through October 30, 2020**, to allow the agency HCP process to be completed, **with an option for the State to seek to extend the stay for additional time** to allow for the federal government's NEPA process if the Board votes to submit the HCP for federal approval at its October meeting.

---

[1] The lead NEPA agency will be the NOAA Fisheries. Dent Decl., ¶ 5(h).

Page 3 -   DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
10185765

**MEMORANDUM IN SUPPORT**

## I.  INTRODUCTION

Since at least April of 2013, before plaintiffs issued their first Notice of Intent to Sue and five years before they filed this lawsuit, defendants have been working on revising the management plan for the state forests at issue, including exploration of an HCP.[2]  Staff resources and grant funding allowed for a dedicated project team to work in earnest toward obtaining a multi-species HCP beginning in November of 2017.

One of the species to be covered under the HCP is coastal Coho – the species at issue in this case.  Working closely with the United States Fish and Wildlife Service and NOAA Fisheries (the Services),[3] as well as other Oregon state agencies, ODF has made substantial progress and expects to have a first administrative draft ready for presentation to the  Board at its October 2020 meeting.  If the Board approves, the draft HCP will be submitted to the Services for review under NEPA.

A stay of this litigation will enable ODF to focus its limited resources on moving the HCP process forward, particularly in light of unprecedented constraints occasioned by the COVID-19 pandemic.  As the Court may recall, plaintiffs have long indicated that their goal is for ODF to have an HCP and ITP in place.  To date, ODF has, as directed by the Board, been able to continue making significant progress on the HCP even while diverting substantial agency resources, that might otherwise have been focused on the HCP development, to address this litigation.  That situation has now changed.  At this point, and as further described below, this litigation is a significant impediment to completing the HCP.  Defendants request a stay that will

---

[2] Work on the management plan revision was paused for most of 2016 and 2017 when a diversion of effort was required to defend a lawsuit brought by a class of Oregon counties. Dent Decl., ¶ 5(a); *see also County of Linn v. State of Oregon and State Forestry Department*, Linn County Case No. 16CV07708. That lawsuit demanded compensation from the State asserting that ODF was not selling enough timber sales and asserting that ODF's timber sales and practices were too protective of natural resources such as water and protected species. *Id*.

[3] NOAA Fisheries, also known as the National Marine Fisheries Service (NMFS), is an office of the National Oceanic and Atmospheric Administration within the Department of Commerce.

Page 4 -   DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
            10185765

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

relieve a considerable resource drain at a time when ODF has new and unavoidable commitments to address the COVID-19 crisis and the upcoming fire season.

## II.    LEGAL STANDARDS

This Court has inherent power to stay its proceedings. As the Supreme Court explained, "the power to stay is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.,* 299 U.S. 248, 254-255 (1936) (citing cases).

In considering motions for stay, courts consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved. *See Center for Biological Diversity v. Henson*, 2009 WL 1882827 *2 (collecting cases). Ultimately, the decision is one committed to the district court's "exercise of a sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

By way of illustration, in a similar case, the Center for Biological Diversity (CBD) sued the United States and others regarding timber harvests in the Elliott State Forest and their impact on Northern Spotted Owls, seeking re-initiation of ESA consultation regarding ODF's 1995 HCP/ITP approved by the Fish and Wildlife Service. *CBD v. Henson*, *supra* at *1. The defendants moved for a stay after making significant progress toward completing a draft revised HCP, arguing that a stay would appropriately preserve judicial and governmental resources, that the HCP/ITP would likely moot the lawsuit, and that progress on the revised HCP could be delayed if the litigation was not stayed. *Id*. at *1. CBD objected to the stay on the grounds that they would be harmed because Northern Spotted Owl habitat could continue to be logged, the species might continue to be taken, and that their claims were urgent. *Id*. at *2.

The court disagreed that CBD would be harmed as a result of the stay, noting the

Page 5 -    DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
10185765

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

speculative nature of the alleged harm and the small percent of the forest's area that would be affected even if the harm did materialize. *Id*. Regarding CBD's claim of urgency, the court noted that they waited two months before amending the complaint and had not moved for a preliminary injunction. Because the "potential prejudice to plaintiffs if this action is stayed is low and there is not a fair possibility that a stay in this case will work damage to plaintiffs," a stay was appropriate. *Id*. at *4.

In contrast, the court found that the defendants made compelling points about the hardship and inequity that would result from denial of the stay. Notably, the defendants argued that taking resources away from the HCP work would cause delays in completing the process and potentially even damage the forest. *Id*. at *3.

Finally, the judicial resources that could be saved by granting a stay were important to the court's decision. In granting a six-month stay, the court noted that a stay would likely moot all or a significant part of the case and would conserve resources that were otherwise likely to be spent on argument and rulings on motions to amend and for summary judgment. *Id.* at *4.

## III.    ARGUMENT

Defendants' Motion establishes that the factors weigh heavily in favor a stay. Plaintiffs will not suffer significant prejudice in view of the proceedings of this case to date. The hardship on defendants is compelling and amply supported by the facts. *See*, Dent Decl. Substantial judicial resources will be saved by suspending impending motion practice and in light of the likelihood of the case becoming moot.

### A.    The Potential for Prejudice to Plaintiffs is Low.

Here, the potential for prejudice to plaintiffs is low, for three reasons.

First, plaintiffs have long stated that their goal is to see ODF submit an HCP and obtain an ITP. *See* Complaint, ECF #1, Prayer for Relief Paragraph 2 (asking the court to "Enjoin Defendants from engaging in the activities that are violating the ESA's take prohibition until and unless Defendants obtain an HCP/ITP pursuant to an enforceable timeline."). The requested stay
Page 6 -    DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
10185765

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

is designed to allow ODF to accomplish precisely that. As discussed below, ODF has been engaged in the HCP development process for many years beginning before plaintiffs began submitting Notices of Intent to Sue. And while this case has for years been diverting resources that could have been better spent on the HCP, ODF managed to proceed on parallel tracks. In light of recent events, continuing to divert resources to this litigation while keeping the HCP on track is becoming increasingly untenable. *See* Dent Decl., ¶¶ 2, 7.

Second, any protestations from plaintiffs regarding the urgency of a rapid resolution of their claims rings hollow in light of their own delays in initiating and prosecuting this case. *See CBD v. Henson*, *supra* at *3 (finding that a six-month stay was reasonable in relation to the urgency of the claims, noting that "plaintiffs waited two months before amending their complaint and have not brought a motion for preliminary injunction."). Plaintiffs first sent a Notice of Intent to Sue in April of 2014 – nearly six years ago.[4] They then waited four years to file suit. After defendants successfully moved against the original complaint, plaintiffs took more than three months before filing the First Amended Complaint. They have sought extensions of virtually every deadline since. They have not moved for a preliminary injunction.

Third, as a practical matter, the likelihood of significant progress in the litigation over the next six months is minimal. Currently, rebuttal expert reports are due May 18, 2020, but that deadline will almost certainly need to be extended because of additional burdens on counsel's ability to work with experts, including with respect to fieldwork, and the restrictions, burdens and inefficiencies associated with moving to a fully remote work environment that are contributing to reduced productivity. Dent Decl., ¶ 2. Moreover, as evidenced by Defendants' Motion to Strike, ECF #75, the parties remain in substantial disagreement about the proper scope of this case, a disagreement that defendants contend must be resolved before further expert work can be completed and other related discovery disagreements either resolved or presented to the

---

[4] The Notices are in the record attached to the Declaration of Deanna Chang in Support of Defendants' Motion to Strike, ECF #76.

Page 7 -   DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
10185765
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Court for resolution.

The potential to take this matter to summary judgment, much less to trial and judgment within the next six months is unlikely in the extreme. And, the whether outcome will even favor plaintiffs is far from certain. On the other hand, if ODF can redirect its litigation resources into productive work with the Services to finish the HCP, plaintiffs' interest in just that result will be served and at far less cost to all involved.

### B.     The Hardship and Inequity to Defendants Supports a Stay.

The hardships of proceeding in this litigation at this time are laid out in detail in the accompanying Declaration of Liz Dent, ODF's Division Chief for State Forests. The main points are summarized below.

#### 1.     ODF has a crucial role in the State's COVID-19 response.

ODF has been tasked by the Governor with a critical role in the state-wide response to COVID-19. As a result of its longstanding wildfire emergency response obligations, ODF has substantial expertise in emergency management. Functionally, that has meant that since the state of emergency was declared on March 8, 2020, ODF has been sending Incident Management Teams of 15 to 20 ODF staff members in two-week rotations to assist the Oregon Health Authority and other state agencies set up incident command centers. These teams have included staff involved in the response to this litigation and have also required those staff to cover the ODF responsibilities of coworkers who are out on teams. It is not yet clear when this new ODF responsibility will end. ODF's role is set forth in detail at Dent Decl., ¶ 3.

#### 2.     The global pandemic impacts ODF's productive capacity.

In addition to these unforeseen emergency management obligations, ODF faces the same obstacles that many agencies and businesses do in the face of this pandemic. In response to the Governor's stay at home order, and the protection of the health and safety of its employees and the public, ODF has closed its offices, with public access by appointment only. Most ODF staff are currently working remotely full-time or part-time. ODF staff members face the same

Page 8 -   DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
           10185765

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

challenges as all Oregonians, including concerns with dependent care and simply dealing with the uncertainty and associated anxiety engendered by the pandemic situation. And, while ODF's information technology professionals are working hard to support the extraordinary remote work environment, there are technological and equipment issues associated with the transition. All of these matters must be expected to adversely impact staff productivity. These challenges are set forth in detail at Dent Decl., ¶ 2.

### 3. ODF must commit resources to the upcoming wildfire season.

ODF coordinates Oregon's wildland firefighting on state lands and its personnel have firefighting duties. Staff from across ODF's various divisions and seasonally-hired firefighters contribute to the effort as needed. All ODF agency staff, regardless of their position, are encouraged to train and become qualified in firefighting or in support roles. ODF employees from outside the Fire Protection division comprise more than half of the teams (known as Incident Management Teams) sent to manage large wildfires on lands protected by ODF.

Each year during fire season (typically June to October), Incident Management Teams are activated as needed. When staff members are assigned to fire protection duties, their day-to-day responsibilities are covered by others. In recent years, fire seasons have grown longer and more intense and, as a result, have drawn more and more heavily on ODF resources, including personnel.

This year, due to the COVID-19 pandemic, ODF anticipates preparation will require more time than usual to allow for designing processes and training for the protection of its Incident Management Teams. In addition, ODF will be putting processes in place to train seasonal firefighters. Everyone involved in wildfire control efforts will be facing the added burden of maintaining social distancing and personal protective measures necessary to protect their and the public's health and safety. ODF's fire protections responsibilities are set forth in detail at Dent Decl., ¶ 4.

Page 9 -   DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
            10185765

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

### 4. The HCP process is at a significant stage.

Key ODF staff involved in responding to this litigation are also involved in ODF's ongoing effort to produce a multi-species HCP for the state forests at issue. If an HCP is obtained, ODF will secure an ITP from the Services covering incidental take, if any, of Coho and other listed species. Continuing to litigate this case will draw resources away from the HCP process and jeopardize the substantial progress that has been made to date. The potential to delay an ongoing HCP process has been recognized as a compelling reason for a stay. *See CBD v. Henson*, *supra* at *3.

The HCP effort commenced "Phase 1" in November of 2017 (determining that an HCP is in Oregon's best interest) and is currently nearing the end of Phase 2 (development of conservation strategies). Public outreach and engagement efforts are ongoing. If ODF is able to maintain the current anticipated timeline, a draft HCP will be completed this Summer, and ready for review at the October 2020 Board meeting. If the timeline holds, at its October meeting the Board will have the opportunity to decide whether to proceed to "Phase 3" of the HCP project: submitting the draft HCP to the Services for NEPA review. While ODF cannot control how long the Services' NEPA review takes, they are hopeful that a NEPA review could be completed in 12-18 months. Details on the HCP and NEPA process are set forth at Dent Decl., ¶ 5.

Substantial progress has been made on this HCP project, despite the resource drain entailed by this litigation. ODF is optimistic, based on work to date with their federal partners, that a mutually agreeable HCP can be developed. Realistically if staff are unable to devote sufficient time to the HCP effort over the next 5-6 months, ODF may be unable to meet these HCP completion dates. As outlined in Defendants' Motion to Strike, ECF #75, and at Dent Decl., ¶¶ 6-7, this litigation's burdensome and ever-shifting demands substantially detract from the ability of agency staff to focus their ever-more-limited resources on completing this HCP effort. Something has to give.

Page 10 -   DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
    10185765

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

### C.      The Requested Stay Will Conserve Judicial Resources.

If the Services approve Oregon's HCP for the forests at issue in this case, they will issue an ITP and this case will be moot. At a minimum, a stay sufficient to allow the HCP process to play out has the potential to vastly simplify "issues, proof, and questions of law." *CMAX, supra*; *CBD v. Henson*, *supra* at *4. However, continuing work on this case over the next six months is likely to require the Court to devote resources to resolving:

- Defendants' pending Motion to Strike;
- Ongoing discovery disputes if the parties cannot resolve them;
- Motions for extension of time of various deadlines as the constraints of the present working environment due to the pandemic continue to impair at least ODF's and Oregon DOJ's ability to effectively and efficiently respond to this litigation;
- Motions for summary judgment;
- Motions in limine; and
- A bench trial that would require the Court to examine the particular facts of dozens and dozens of individual timber sales and haul routes – a process that is likely to take weeks for the defense case alone.

Granting a stay at this juncture is a reasonable exercise of the Court's discretion, coming at a time of unprecedented constraints on judicial resources from the COVID-19 protection measures, and in the interest avoiding undue litigation burdens while ODF navigates through the demands imposed on it as a direct result of the crisis, while fulfilling its obligations to Oregonians as the lead fire protection agency, and pursuing an HCP that may resolve the substantive dispute here.

### IV.      CONCLUSION

For the forgoing reasons, defendants respectfully request that the Court issue a stay of all proceedings in this matter **through October 30, 2020**. If the Board votes to submit the draft

HCP to the Services at that time, defendants will request a further extension of the stay to permit the Services to reach a decision.

DATED April 13, 2020.

          Respectfully submitted,

          ELLEN F. ROSENBLUM
          Attorney General

          *s/ Darsee Staley*
          SARAH WESTON #085083
          DARSEE STALEY #873511
          DEANNA J. CHANG #192202
          Senior Assistant Attorneys General
          Trial Attorneys
          Tel (971) 673-1880
          Fax (971) 673-5000
          Sarah.Weston@doj.state.or.us
          Darsee.Staley@doj.state.or.us
          Deanna.J.Chang@doj.state.or.us
          Of Attorneys for Defendants

Page 12 -   DEFENDANTS' MOTION FOR STAY; MEMO IN SUPPORT
    10185765

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000